**UNITED STATES of America, Appellee,**

v.

**Carroll Zane TILLETT, a/k/a Frog, a/k/a Greenie, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Michael Dale ROGERS, Appellant.**

Nos. 84–5252, 84–5253.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1985.

Decided June 5, 1985.

Joseph B. Cheshire, V, Raleigh, N.C. (Purser, Cheshire, Manning & Parker, Raleigh, N.C., on brief), for appellant Tillett.

Thomas F. Loflin, III, Durham, N.C. (Loflin & Loflin, Durham, N.C., on brief), for appellant Rogers.

Tommy E. Miller, Asst. U.S. Atty., Norfolk, Va. (William G. Otis, Asst. U.S. Atty., Elsie L. Munsell, U.S. Atty., Alexandria, Va., Lynn Leibovitz, third year law student, on brief), for appellee.

Before WIDENER and ERVIN, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

**WIDENER, Circuit Judge:**

Carroll Zane Tillett and Michael Dale Rogers appeal their convictions of conspiracy to import marijuana in violation of the Racketeer Influenced and Corrupt Organization (RICO) provisions of title 18. *See* 18 U.S.C. §§ 1961 *et seq.* Both defendants were convicted under 18 U.S.C. § 1962(d) for conspiring to violate 18 U.S.C. § 1962(c). We affirm.

In 1984, Tillett and Rogers were indicted along with several other defendants for RICO violations on the basis of their participation in an enterprise allegedly formed for the purpose of making money through the importation and distribution of marijuana. The indictment charged that the defendants affiliated and associated with the enterprise to effect its criminal objectives through a pattern of racketeering activity, *see* 18 U.S.C. §§ 1961(1), (4), (5), 1962(c), and that they conspired together and with other persons to participate directly and indirectly in the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d) (RICO conspiracy).[1] The jury found both defendants guilty of a RICO conspiracy. Tillett received a sentence of eight years' imprisonment and a $10,000 fine, while Rogers received a sentence of four years' imprisonment and a $2,500 fine.

They appeal their convictions on two grounds. First, they claim that the evidence was insufficient to support the RICO conspiracy convictions. Second, they argue that their convictions should be reversed because Congress did not intend for marijuana offenses to constitute predicate acts

---

1. § 1962(d) provides that it shall be unlawful for any person to conspire to violate § 1962(a), (b), or (c). 18 U.S.C. § 1962(d). The defendants here were charged with conspiring to violate § 1962(c) which provides in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

*Id.* § 1962(c). RICO § 1961 defines the substantive elements of a § 1962(c) enterprise offense.

An "enterprise" includes, *inter alia*, "any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4). A "pattern of racketeering activity" requires at least two acts of racketeering activity as defined by § 1961(1). *Id.* § 1961(5). Section 1961(1) defines "racketeering activity" to include, *inter alia:*

> (D) any offense involving ... the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States....

*Id.* § 1961(1)(D).

of racketeering activity under RICO. We will consider these contentions in order.

Defendants attack the sufficiency of the evidence to support their RICO conspiracy convictions by arguing that the government failed to prove that an enterprise existed and that, even if the evidence established the existence of a RICO enterprise rather than the existence of separate and distinct conspiracies, the government failed to prove that they knowingly agreed to participate in the enterprise's affairs through a pattern of racketeering activity. *See* 18 U.S.C. §§ 1962(c), (d). Reviewing the evidence in the light most favorable to the government, *see Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), we conclude that the evidence was sufficient to show that a single enterprise existed and that defendants knowingly agreed to participate in the affairs of that enterprise through a pattern of racketeering activity.

The evidence showed that both defendants participated in a marijuana smuggling venture at the direction of one Delbert Holland. Holland began smuggling marijuana from Columbia, South America to the East Coast of the United States in early 1976. Between 1976 and early 1978, Holland, as copilot, smuggled marijuana out of Columbia by airplane on six occasions. Two brothers, Ned and Fred Shure, financed the airplane importations. In mid-1979, Holland and the Shure brothers decided to smuggle marijuana by boat from Columbia to the coast of North Carolina. The Shures agreed to supply financing for the operation and to contact individuals who would ship the marijuana to the East Coast. Holland, on the other hand, agreed to make arrangements for sending boats from the coast that would meet the Columbian boat offshore, transfer the marijuana from the Columbian boat to the American boats, and shuttle the marijuana to shore for unloading. In early 1980, Holland approached appellant Tillett to discuss the possibility of using Tillett's boat in an upcoming offload operation off the coast of Stumpy Point, North Carolina. In April 1980, Tillett captained his boat, the *Cheryl Ann*, to meet the Columbian boat offshore, loaded the marijuana onto the *Cheryl Ann*, and returned to shore to unload the marijuana onto trucks.

In the summer of 1980, the Shure brothers and Holland discussed another boat importation. In the meantime, however, Holland met two Canadians, known only as Gene and Ben, who agreed to finance an importation of marijuana by boat from Columbia. The Canadians would finance the importation, arrange for the purchase in Columbia, and ultimately wholesale the marijuana. Holland would arrange for an offloading site, transportation and personnel. The Shure brothers were not involved in the Holland-Canadian importation.

Holland and the Canadians successfully offloaded the smuggled marijuana in October 1980, although neither appellant herein participated in the venture. The profits of the importation went to purchase a steel trawler, the *Miss Michelle*. Thereafter, the Canadians and Holland sent the *Miss Michelle* to Columbia to pick up another load of marijuana and to transport it to the coast of North Carolina for an offload in the spring of 1981. Once again, Holland was responsible for providing the offload site, transportation, and personnel. Holland arranged for the use of a small boat, the *Miss Crystal*, to meet the *Miss Michelle* offshore and transport the marijuana to shore. While Rogers' father actually owned the *Miss Crystal*, Rogers captained the boat during the spring of 1981 offload and transported the marijuana to shore for unloading.

Holland and the Canadians arranged another importation in the fall of 1981. Holland arranged for several boats to meet a Columbian boat offshore. Both Rogers and Tillett agreed to and did participate in the offload. Tillett captained the *Cheryl Ann* and Rogers captained the *Miss Crystal*. The marijuana was successfully offloaded, transported to shore, and unloaded.

The defendants argue that the government has failed to prove the existence of a RICO enterprise conspiracy because the ev-

idence establishes the existence of at least two separate and distinct conspiracies rather than the existence of an enterprise within the meaning of RICO. *See* 18 U.S.C. §§ 1961(4), 1962(c). Defendants contend that the Holland-Shure operation and the Holland-Canadian operation were separate and distinct conspiracies which could not be part of a single enterprise. We disagree.

In *United States v. Griffin*, 660 F.2d 996 (4th Cir.1981), *cert. denied sub nom. Garonzik v. United States*, 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 313 (1982), we considered what would constitute proof necessary for establishing the existence of an illegitimate enterprise of individuals associated in fact under RICO.[2] Relying on the definition of an illegal RICO enterprise that the Supreme Court formulated in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), we stated:

> [p]roof of the existence of an associated-in-fact enterprise requires proof of a "common purpose" animating its associates, and this may be done by evidence of an "ongoing organization, formal or informal," of those associates in which they function as a "continuing unit."

660 F.2d at 1000, *quoting Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528. Additionally, in *Griffin* we emphasized that the government must prove that the association exists separate and apart from the pattern of racketeering activity in which it engages. 660 F.2d at 999; *see Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528.

Under the *Griffin* analysis, we think there is substantial evidence to support the jury's determination that defendants participated in the affairs of an illegitimate associated-in-fact enterprise. Even though the financiers of the marijuana importation venture changed in 1980, the evidence showed that from 1976 through 1981, the common purpose of Holland and his financiers at any relevant time was making money in the illegal trafficking of marijuana.

Aside from this direct evidence of common purpose of the participants in the marijuana importing venture, the common purpose is also shown by sufficient evidence that the operation was an ongoing organization in which the associates functioned as a continuing unit. Evidence of the ongoing nature of the organization related to the operational structure of the group. Although the faces in the group may have changed, there was substantial evidence of a structure within the group within which the various associates operated according to their specific function with regard to the smuggling venture. From 1976 to 1982, Holland played a central role in the smuggling operations. Whether his financiers were the Shures or the Canadians, Holland would arrange for the offloading and the transportation of the marijuana to shore. The Shures or the Canadians would finance the importations, arrange for the Columbian marijuana connections, and distribute the marijuana wholesale after Holland's operation had unloaded it and brought it to shore. The smuggling techniques and details of operation were virtually the same from one boat importation to the next. We conclude that this evidence was sufficient to show an ongoing organization within which there were financiers, organizers, and associates who would perform more or less specific functions relating to the importation, transportation, and distribution of marijuana.

Furthermore, reviewing the evidence in the light most favorable to the government as *Glasser, supra,* requires us to do, we think the evidence is sufficient to show that the associates functioned as a continuing unit. There was both a continuity of structure and personality within the organization despite the change in financiers. *See United States v. Lemm*, 680 F.2d 1193 (8th Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983) (recognizing that continuity may be met even when changes in personnel occur or even when different individuals manage the affairs of the enterprise at different times provided

---

**2.** We note that an associated-in-fact enterprise is one type of enterprise defined in § 1961(4). A RICO enterprise also includes "any individual, partnership, corporation, association, or other legal entity." *Id.* 1961(4).

the associational ties of those charged with a RICO violation amount to an organizational pattern or system of authority). The personnel underwent little change throughout and the roles that they performed in the operation were unchanged. The substitution of the Canadians for the Shures did not destroy the continuity of the operation because the Canadians, like the Shures had done before, assumed the role of financiers.

■ Having determined that the evidence was sufficient to show an ongoing organization within which the various associates functioned as a continuing unit, we next consider whether the government proved that the organization existed separate and apart from the pattern of racketeering in which it was engaged at any particular moment. *See Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528. We conclude that the evidence was adequate to show that the organization had an existence beyond that which was necessary to commit the predicate crimes. *See United States v. Riccobene*, 709 F.2d 214, 223–24 (3d Cir.), *cert. denied sub nom. Ciancaglini v. United States*, — U.S. —, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); *United States v. Bledsoe*, 674 F.2d 647, 665 (8th Cir.), *cert. denied sub nom. Phillips v. United States*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982). The evidence showed that the organization existed in the intervals between actual importations. For example, a seafood restaurant was established to serve as a legitimate business front for the smuggling operation. Trucks and equipment were purchased and, significantly, a corporation was formed for the purpose of purchasing *Miss Michelle*.

Based on the foregoing, we think the jury was justified in finding that the smuggling operation was an illegitimate single enterprise under RICO and that defendants participated in its affairs. Defendants, however, contend that, even so, the evidence was insufficient to show that they knowingly participated in the affairs of the enterprise through a pattern of racketeering activity.[3] Instead, defendants claim that the evidence shows only that they conspired to commit the predicate acts.

■ A defendant may be convicted of enterprise conspiracy only upon a showing that he, by either words or action, objectively manifested an agreement to participate directly or indirectly in the affairs of the enterprise through the commission of at least two predicate acts of racketeering activity. *See United States v. Truglio*, 731 F.2d 1123, 1133 (4th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 197, 83 S.Ct. 130; *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir.), *cert. denied sub nom. Hawkins v. United States*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). The government need not establish that each conspirator had knowledge of all of the details of the conspiracy but, rather, only that the defendant participated in the conspiracy with knowledge of the essential nature of the plan. *Blumenthal v. United States*, 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947); *United States v. Barnes*, 747 F.2d 246, 249 (4th Cir.1984).

■ After reviewing the record, and paying particular attention to the evidence with respect to the substantive associational offense, we think sufficient evidence supports the conspiracy convictions under section 1962(d). Viewing the evidence in the light most favorable to the government, we conclude that the jury properly could have found that the defendants participated in the enterprise conspiracy with knowledge of the essential nature of the plan which, as we have discussed, was to make money in the illegal importation and distribution of marijuana.

The jury reasonably could have concluded that the defendants, by agreeing to captain their boats for Holland on two occasions, understood that they were part of an

---

**3.** In addition to contending that the government's evidence was insufficient to show the existence of a single enterprise, Rogers argues that there was a prejudicial variance between the indictment charging one conspiracy and the evidence proving two conspiracies since he participated only in the Holland-Canadian operation. We reject this contention because we think there was no variance from the indictment. The evidence was sufficient for the jury to determine that Rogers participated in a single enterprise conspiracy with changed financing.

ongoing business. Simply because there was an interval of several months between shipments would, in no way, affect the fact that defendants understood that they could be called upon by Holland again to repeat their offloading function. Indeed, such was the case, as both defendants agreed to, and did, perform for Holland's operation on two occasions.[4] Moreover, having found that the record suggests that it was reasonable for the jury to conclude that a single enterprise existed for the purpose of making money through the illegal importation and distribution of marijuana, a similar review of the evidence, we think, shows that the jury properly could have found that each defendant understood the scope of the enterprise and knowingly agreed to further its criminal objectives by committing various acts of racketeering activity.

Accordingly, we conclude that the evidence was sufficient to support the convictions under section 1962(d) for enterprise conspiracy.

█ Finally, we turn to defendants' contention that their convictions should be reversed because the act of dealing in marijuana is not a predicate act of racketeering activity that is proscribed by RICO since the statute refers only to "dealing in narcotic or other dangerous drugs." 18 U.S.C. § 1961(1). We disagree. Because Congress has classified marijuana a Schedule I controlled substance, *see* 21 U.S.C. § 812, and made dealing in such a federal offense, *see* 21 U.S.C. § 841, we are of opinion that RICO encompasses marijuana offenses. *United States v. Phillips*, 664 F.2d 971, 1039–40 (5th Cir.1981), *cert. denied sub nom. Meinster v. United States*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). Therefore, we conclude that both defendants conducted two predicate acts of

racketeering activity and that this constituted a RICO pattern of racketeering activity.

Because we have found that the evidence was sufficient to support the jury's determination that defendants knowingly participated in the affairs of an enterprise through a pattern of racketeering activity and that both defendants did in fact commit two acts of racketeering activity are proscribed by RICO, the judgment of the district court is accordingly

AFFIRMED.

---

4. Tillett argues that since he refused to captain his boat for an importation offload in December 1980, the mere fact that he refused to participate in the enterprise's affairs on that occasion showed that he did not knowingly agree to participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. Tillett asserts that the requisite knowledge for the RICO conspiracy conviction was destroyed by the fact that in the time period between his commission of the two acts of importation in

April 1980 and the fall of 1981, he refused to participate in an offload in December 1980. Contrary to that assertion, we think the jury reasonably could have concluded from the evidence that Tillett knowingly agreed to participate in the enterprise's affairs through a pattern of racketeering activity. The fact that he may have refused on the second occasion to further the affairs of the enterprise does not mean that he did not voluntarily participate in them on the first and third occasions.