Ming-Chu CHANG; Kang-Jye Chen; Ching-Chieh Chang; A.C.I. Trading Inc., Plaintiffs-Appellants,

and

Fu-Nan Chen, aka, George Chen, Plaintiff,

v.

Shu-Jen Tseng CHEN, Defendant,

and

Eugene Gabrych; Marian Gabrych; Eddie Lin, aka, Eddy C. Lin, aka, Chi-Chang Lin, Defendants-Appellees.

No. 94-55583.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 18, 1995.

Decided April 4, 1996.

Mark Riera, Sheppard, Mullin, Richter & Hampton, Los Angeles, California, for the plaintiffs-appellants.

Thomas C. Mundell, Mundell, Odlum & Haws, San Bernardino, California, and Linda Monroe, Law Office of Timothy S. Harris, Los Angeles, California, for the defendants-appellees.

Before: POOLE, BOOCHEVER, and O'Scannlain, Circuit Judges.

## OPINION

BOOCHEVER, Circuit Judge:

Ming-Chu Chang, Kang–Jye Chen, Ching–Chieh Chang and A.C.I. Trading, Inc. (collectively "Appellants") appeal a district court decision that dismissed their second amended complaint without leave to amend. Appellants brought their action against Eugene Gabrych, Marian Gabrych and Eddie Lin (collectively "Appellees") for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 (1988), arising out of a series of real estate transactions conducted in 1989 and 1990. The district court dismissed the complaint, finding that Appellants failed to allege a cognizable RICO enterprise.

This appeal raises the issue whether the Supreme Court's decision in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), requires a RICO enterprise to have an ascertainable structure separate and apart from that inherent in the pattern of racketeering activity, or whether *Turkette* permits a RICO enterprise to be no more than the sum of the predicate racketeering acts. We hold that a RICO enterprise must have an ascertainable structure separate and apart from the structure inherent in the conduct of the pattern of racketeering activity.

Because the district court properly concluded that Appellants failed to allege a cognizable RICO enterprise under this standard, we affirm the district court's decision to dismiss Appellants' second amended complaint. We also affirm the district court's decision to dismiss without leave to amend because there is no reason to believe that any amendment would cure the deficiency.

## FACTS

Appellant Ming–Chu Chang initially filed an action in federal court alleging RICO and state law fraud claims against Appellees. The RICO claim was not properly pled. On February 8, 1993, the district court dismissed the complaint with leave to amend. Chang filed a first amended complaint that realleged both the RICO and the state law fraud claims. Appellants Kang–Jye Chen, Ching–Chieh Chang and A.C.I. Trading, Inc. joined Appellant Ming–Chu Chang as plaintiffs in the first amended complaint. Appellees again moved to dismiss, arguing that Appellants had not adequately pled either a RICO enterprise or a pattern of racketeering activity. Appellees also filed a motion for summary judgment.

On November 4, 1993, the district court denied Appellees' motion for summary judgment. The court also dismissed Appellants' RICO claims with leave to amend. The dismissal order discussed the substantive requirements for a RICO claim and advised Appellants that the court would allow only one more amended complaint. Additionally, the court declined to continue exercising supplemental jurisdiction over Appellants' state

law fraud claims, which Appellants had refiled in state court.

On December 6, 1993, Appellants filed a second amended complaint asserting two RICO claims. The complaint described in detail three land transactions between Appellants and Appellees, and referred to twenty-eight additional transactions involving Appellees and buyers who are not parties to the present action. Appellees allegedly conducted each of these transactions in a similar manner.

Appellee Eugene Gabrych and Appellee Marian Gabrych (jointly "Appellees Gabrych") would secure an option to acquire a parcel of land in Riverside County, California. Appellees Gabrych would then enter into a first escrow to purchase the property.

Appellee Lin would solicit potential buyers to invest in the Riverside property by making fraudulent representations. After locating an "unsuspecting" buyer, a second escrow for the property would be opened, with George Realty Company, Inc. ("George Realty") acting as the broker and Appellee Lin serving as the sales agent representing George Realty. Appellee Lin would then sign a land purchase agreement on behalf of George Realty, with Appellees Gabrych listed as the sellers.

The "unsuspecting" buyer would make a nonrefundable deposit into the second escrow without being informed of the existence of the first escrow. A trust deed on the property would secure the financing, which was arranged to require a nonrefundable deposit, interest-only payments for a limited time, and a balloon payment at the end of that time for the remainder of the purchase price. In some cases, Appellees would utilize a "straw man" who would "purchase" the property for an inflated price just prior to the closing of the second escrow in order to conceal the property's true value from the "unsuspecting" buyer.

According to the second amended complaint, Appellee Eddie Lin, Appellee Eugene Gabrych, Appellee Marian Gabrych and George Realty formed a RICO enterprise by associating in fact to conduct the above described fraudulent real estate transactions.

Each Appellee allegedly was in charge of and played a vitally important role in controlling and managing a specific phase of the enterprise's activities. Specifically, Appellees Gabrych were in charge of locating and securing the right to purchase the properties at nominal costs. Appellees Gabrych also would direct Appellee Lin to solicit "unsuspecting" buyers and to misrepresent the value of the Riverside properties to those buyers. Appellee Lin was in charge of having the buyers execute real property purchase agreements. In return for their respective roles, Appellees profited from the nonrefundable deposits.

On February 28, 1994, the district court held a hearing on Appellees' motion to dismiss the second amended complaint. After the hearing, the district court found that the complaint did not allege a cognizable RICO enterprise and that the complaint did not allege with sufficient particularity two predicate acts against either Appellee Marian Gabrych or Appellee Lin. The district court also found that Appellants could not cure these deficiencies by amendment. Consequently, the district court granted Appellees' motion to dismiss the second amended complaint without leave to amend. Judgment was entered in favor of Appellees on March 28, 1994. This appeal followed.

## STANDARD OF REVIEW

A dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo*. *Everest and Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir.1994). Review is limited to the contents of the complaint. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989) (as amended). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Everest and Jennings*, 23 F.3d at 228. Absent unusual circumstances, "[d]ismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir.1991).

## DISCUSSION

RICO provides, in pertinent part, that:

It shall be unlawful for any person employed by or associated with any *enterprise* engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (emphasis added). RICO also makes it unlawful for any person to conspire to violate any provision of this subsection. *Id.* § 1962(d).

RICO defines the term "enterprise" to include (1) "any individual, partnership, corporation, association, or other legal entity," and (2) "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). At issue in the present appeal are the minimum requirements for an associated-in-fact enterprise.

The Supreme Court has held that a group of individuals associated in fact for wholly unlawful ends could constitute an enterprise for purposes of RICO. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). According to the Court, establishing the existence of an associated-in-fact enterprise requires proof (1) of an ongoing organization, formal or informal, and (2) that the various associates function as a continuing unit. *Id.* at 583, 101 S.Ct. at 2528.

The second amended complaint adequately alleged that Appellees, as associates, functioned as a continuing unit. According to the district court, however, the second amended complaint failed to allege an organization, formal or informal, with sufficient structure to constitute an enterprise for purposes of RICO.

Turkette does not specify how much structure an organization must have to be an enterprise under RICO. This issue has divided the circuit courts that have considered

it. Six circuits have interpreted the Supreme Court's decision in *Turkette* to require a RICO enterprise to have an ascertainable structure separate and apart from the pattern of racketeering activity in which it engages. *See United States v. Riccobene*, 709 F.2d 214, 223–24 (3d Cir.) (as amended), *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); *United States v. Tillett*, 763 F.2d 628, 632 (4th Cir.1985); *Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438, 441 (5th Cir.) (per curiam), *cert. denied*, 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987); *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir.1995) (citing *United States v. Neapolitan*, 791 F.2d 489, 499–500 (7th Cir.), *cert. denied*, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986)); *United States v. Bledsoe*, 674 F.2d 647, 665 (8th Cir.), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982); *United States v. Sanders*, 928 F.2d 940, 944 (10th Cir.), *cert. denied*, 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991).[1]

The six circuits that utilize this majority interpretation of the enterprise element have expressed concern that an overly broad construction of the term "enterprise" would render that element of the offense interchangeable with the "pattern of racketeering" element. These circuits relied, in part, on language in the *Turkette* decision to justify their interpretation. In *Turkette*, the Court stated that "[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528.

In contrast, two circuits have interpreted *Turkette* to permit the organization constituting the enterprise to be no more than the sum of the predicate racketeering acts. *See United States v. Bagaric*, 706 F.2d 42, 55 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983); *United States v. Cagnina*, 697 F.2d 915, 921 (11th Cir.), *cert.*

---

1. Although the present case deals with a civil RICO action and many of the cases cited in support of the majority approach were criminal RICO actions, there appears to be little reason to interpret the enterprise requirement differently in civil and criminal RICO cases. The substance of a RICO violation is set forth in § 1962(c) and is identical for civil and criminal cases. The definition of enterprise in § 1961(4) is identical for civil and criminal cases. Only the remedies differ, with § 1963 governing criminal remedies and § 1964 governing civil remedies.

*denied,* 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983). The two circuits that adhere to this minority view of the enterprise element also relied, in part, upon language in the *Turkette* decision to justify their interpretation. Specifically, in *Turkette,* the Supreme Court stated that the proof used to establish the existence of an enterprise "may in particular cases coalesce" with the proof used to establish the pattern of racketeering activity. *Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528.

The Ninth Circuit has not yet resolved how much structure RICO's enterprise element requires. *See United States v. Blinder,* 10 F.3d 1468, 1474 (9th Cir.1993) ("Because we find that our earlier interpretation of the more stringent 'separate existence' test has been met, we again decline the invitation" to decide how much structure RICO's enterprise element requires.); *United States v. Feldman,* 853 F.2d 648, 660 (9th Cir.1988) (as amended) ("Because we believe that the enterprise alleged here meets the more stringent standard, we need not decide the issue in this case."), *cert. denied,* 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989); *United States v. Kirk,* 844 F.2d 660, 664 (9th Cir.) ("[U]nder either test, the existence of a corporation fulfills the requirements of an ascertainable structure apart from the predicate racketeering activity."), *cert. denied,* 488 U.S. 890, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988); *United Energy Owners Comm., Inc. v. United States Energy Mgmt. Sys., Inc.,* 837 F.2d 356, 363 (9th Cir.1988) (as amended) ("We need not decide which interpretation of *Turkette* is more appropriate, however, because the plaintiffs have sufficiently alleged the existence of two separate enterprises under either view."). *See also United States v. DeRosa,* 670 F.2d 889, 896 (9th Cir.1982) (enterprise established by compelling evidence of organization), *cert. denied,* 459 U.S. 993, 103 S.Ct. 353, 74 L.Ed.2d 391 (1982); *United States v. Bagnariol,* 665 F.2d 877, 891 (9th Cir.1981) (per curiam) (enterprise established by compelling evidence of agreement to establish organization), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982).

District courts in the Ninth Circuit, however, have been fairly consistent in applying the majority interpretation to determine whether a RICO enterprise existed. *See In re Rexplore, Inc. Sec. Litig.,* 671 F.Supp. 679, 689 (N.D.Cal.1987); *Sigmond v. Brown,* 645 F.Supp. 243, 246 (C.D.Cal.1986), *aff'd on other grounds,* 828 F.2d 8 (9th Cir.1987); *In re National Mortgage Equity Corp. Mortgage Pool Cert. Sec. Litig.,* 636 F.Supp. 1138, 1160–61 (C.D.Cal.1986); *Medallion TV Enters., Inc. v. SelecTV of Cal., Inc.,* 627 F.Supp. 1290, 1294 (C.D.Cal.1986), *aff'd on other grounds,* 833 F.2d 1360 (9th Cir.1987), *cert. denied,* 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989); *Allington v. Carpenter,* 619 F.Supp. 474 (C.D.Cal.1985) (Rymer, J.). *But see Lewis v. Sporck,* 612 F.Supp. 1316, 1324 (N.D.Cal.1985).

■ We now adopt the majority interpretation of the enterprise element, which requires the organization, formal or informal, to be "an entity separate and apart from the pattern of [racketeering] activity in which it engages." *Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528.

We agree with the reasons set forth by Judge Rymer in *Allington v. Carpenter,* 619 F.Supp. at 479, for rejecting the minority interpretation of the enterprise element. *See United Energy,* 837 F.2d at 362 n. 13 (noting in *dictum* that *Allington* "correctly recognized that under *Turkette* every private plaintiff asserting a violation of RICO section 1962(c) must 'plead an enterprise apart from the underlying pattern of racketeering activity.'" (quoting *Bledsoe,* 674 F.2d at 665)). First, adoption of the minority approach effectively would render the enterprise element superfluous, because under that view "every 'pattern of racketeering activity' becomes an 'enterprise' whose affairs are conducted through the 'pattern of racketeering activity.'" *Allington,* 619 F.Supp. at 479. Such a result would be "incongruous given the centrality of the 'enterprise' element in the statutory scheme." *Id. See Neapolitan,* 791 F.2d at 500.

Second, adoption of the minority approach would strip RICO of its focus on "organized" crime by ignoring "the organizational nexus at the heart of the RICO scheme." *Alling-*

*ton,* 619 F.Supp. at 479. "The statute was directed at 'organized' crime, which, unlike individual and group crime, has access to resources that pose a special threat to legitimate business." *Id.* (citing Cressy, "The Functions and Structure of Criminal Syndicates," *Task Force Report: Organized Crime, the President's Commission on Law Enforcement and Administration of Justice* (1967)). *See Neapolitan,* 791 F.2d at 500; *Bledsoe,* 674 F.2d at 662.

Finally, adoption of the minority approach would permit proof of a conspiracy to satisfy the enterprise element of § 1962(c). *Allington,* 619 F.Supp. at 479. This, in turn, would render § 1962(d), which makes it unlawful to conspire to violate § 1962(c), a proscription of conspiracies to conspire. *Id.* "Because RICO does not require proof of a single agreement as in [the standard 18 U.S.C. § 371] conspiracy case,[2] [the minority approach] *creates a danger of guilt by association.*" *Bledsoe,* 674 F.2d at 664 (footnote added). *See also Neapolitan,* 791 F.2d at 500 (noting that RICO "involves two conglomerations of people, the conspiracy and the enterprise, and this distinction helps to insure that section 1962(d) is more limited than section 371").

A comparison of the severe penalties and remedies authorized by RICO with those for section 371 conspiracy indicates that RICO "must have been directed at participation in enterprises consisting of more than simple conspiracies to perpetrate the predicate acts of racketeering." *Bledsoe,* 674 F.2d at 664. *Compare* 18 U.S.C. § 1963(a) (fine up to $25,000 or imprisonment up to 20 years or both) and 18 U.S.C. § 1964(c) (allowing for treble damages and reasonable attorney's fees in civil actions) *with* 18 U.S.C. § 371 (prior to 1994 amendment) (5 years imprisonment and maximum fine of $10,000). Further, under the minority approach, RICO's greater punishment could only be explained by its requirement of two predicate acts. *Bledsoe,* 674 F.2d at 664. That construction would render RICO nothing more than a tool

for punishing recidivists. Such could not have been Congress' intent, because RICO explicitly provided for heightened punishment of repeat offenders. *Id. See* 18 U.S.C. § 3575(e)(1) (repealed effective 1987; yet was enacted by Congress in the same public law that enacted RICO, Pub.L. No. 91–452 (Oct. 15, 1970)).

▋ Under our interpretation of the enterprise element, the predicate acts of racketeering activity, by themselves, do not satisfy the RICO enterprise element. Although the evidence used to establish an enterprise and a pattern of racketeering activity may in particular cases coalesce, "[t]he existence of an enterprise at all times remains a separate element which must be proved." *Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528.

▋ At a minimum, to be an enterprise, an entity must exhibit "some sort of structure . . . for the making of decisions, whether it be hierarchical or consensual." *Riccobene,* 709 F.2d at 222. The structure should provide "some mechanism for controlling and directing the affairs of the group on an ongoing, rather than an ad hoc, basis." *Id.* The structure requirement, however, "does not mean that every decision must be made by the same person, or that authority may not be delegated." *Id.*

▋ It also is not necessary to show that the organization "has some function wholly unrelated to the racketeering activity." *Id.* at 223–24. Rather, it is sufficient to show that the organization has an existence beyond that which is merely necessary to commit the predicate acts of racketeering. *Id.* at 224. "The function of overseeing and coordinating the commission of several different predicate offenses and *other activities* on an on-going basis is adequate to satisfy the separate existence requirement." *Id.* (emphasis added).

▋ Applying the majority interpretation of the enterprise requirement to Appellants'

---

**2.** 18 U.S.C. § 371 (prior to 1994 amendment) provided, in part:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency there-

of in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

second amended complaint, we conclude, as did the district court, that Appellants have failed to allege an organization, formal or informal, with sufficient structure to satisfy RICO's enterprise element.

Appellants have not alleged a structure to the organization beyond that which was inherent in the alleged acts of racketeering activity. The second amended complaint did not allege the existence of a system of authority that guided the operation of the alleged enterprise. Although each Appellee performed the same specific functions in each transaction, cf. *Bledsoe*, 674 F.2d at 666 (finding no enterprise even though two schemes were conducted using the same modus operandi), there was no decision-making apparatus that limited or guided Appellees in the performance of their respective duties. Each Appellee conducted his or her role in the alleged fraudulent real estate transactions autonomously.

█ The only reference in the second amended complaint to a hierarchical relationship among Appellees alleged that after securing an option on a piece of property, the Gabryches would "direct and order Defendant Eddie Lin to solicit prospective buyers.... Defendant Eddie Lin, at the direction and order of Defendants Gabryches, would make misrepresentations or conceal material facts concerning the value of the real property and its likelihood of a quick sale with a profit to buyers." This lone statement that the Gabryches directed Lin's actions is insufficient to establish that there was an enterprise separate and apart from the predicate acts. It does not indicate that there was a mechanism "for controlling and directing the affairs of the group on an ongoing, rather than an ad hoc, basis." *Riccobene*, 709 F.2d at 222. It does not indicate that the Gabryches guided Lin in any way in the performance of his role in the transactions. Rather, this statement, at most, seems to indicate that the Gabryches devised a plan for committing fraudulent real estate transactions, and that Lin's role within that scheme involved deceiving prospective buyers. When Lin agreed to perform this role, he entered into a conspiracy to commit the predicate acts of racketeering activity. A

conspiracy, however, is not an enterprise for purposes of RICO. See *Neapolitan*, 791 F.2d at 500.

In addition to lacking a structure for decision making, there was no allegation that Appellees utilized a structure separate and apart from the predicate acts to distribute the proceeds of the transactions. The proceeds were allocated to Appellees in a manner consistent with ordinary real estate transactions. Appellees did not use the profits to purchase equipment to allow them to commit the predicate acts. Cf. *Tillett*, 763 F.2d at 630, 632 (finding enterprise where individuals used proceeds from predicate acts to purchase boat to smuggle drugs). Appellees also did not utilize a management company to divert funds. Cf. *Bledsoe*, 674 F.2d at 665 (finding no enterprise where individuals diverted funds through management company because agreement to divert had such a short duration).

█ It is true that the involvement of a corporation, which has an existence separate from its participation in the racketeering activity, can satisfy the enterprise element's requirement of a separate structure. See *Feldman*, 853 F.2d at 660; *Tillett*, 763 F.2d at 632. In *Feldman*, we held that two individuals and seven corporations formed an enterprise by associating in fact to commit arson and insurance fraud. *Feldman*, 853 F.2d at 655–60. We found that the enterprise had an existence separate and apart from the pattern of racketeering activity because the corporations alleged to be part of the RICO enterprise were involved in the RICO activity and had legal existences separate from their participation in the racketeering. *Id.* at 660. The corporations made the RICO activities possible and profitable by providing a legal shield for the illegal activity. *Id.* at 656. The corporations also functioned to achieve objectives that were not illegal, such as building homes and manufacturing tools, and existed for the purpose of making money for the individual defendants. *Id.* at 660.

To read *Feldman* as permitting the inclusion of George Realty in the alleged enterprise to satisfy the separate structure requirement in the present case, however,

would render the enterprise element meaningless, because George Realty played no role whatsoever, legal or fraudulent, in the operations of the alleged enterprise.

The second amended complaint alleged that George Realty was part of the enterprise, but did not name George Realty as a defendant and did not explain George Realty's relationship to or participation in the alleged enterprise, except to note that Eddie Lin was the real estate agent representing George Realty. Although George Realty had a legal existence separate from the racketeering activity, Appellants did not allege that it participated in the racketeering activity. Appellants also did not allege that George Realty shielded Appellees from liability or detection, existed for the purpose of making money for the individual Appellees, or facilitated completion of the alleged fraudulent transactions or the distribution of proceeds. *See id.* at 656 (corporations enabled individuals to prevent creditors from discovering insurance proceeds). Appellees did not incorporate George Realty to conduct legitimate business activity for the benefit of the alleged enterprise. *See Tillett,* 763 F.2d at 632 (restaurant established to serve as a legitimate business front for smuggling operation). Thus, the mention of George Realty in the description of the alleged enterprise fails to satisfy the separate structure requirement.

The second amended complaint also did not allege that George Realty, itself, was the enterprise. *See United Energy,* 837 F.2d at 363. Such an allegation would have precluded Appellants from naming the Gabryches as defendants because there is no indication that the Gabryches had any management and control responsibility over George Realty, as would be required. *See Reves v. Ernst & Young,* 507 U.S. 170, 177-78, 113 S.Ct. 1163, 1169-70, 122 L.Ed.2d 525 (1993).

In sum, Appellants have failed to allege an organization separate and apart from that inherent in the perpetration of the alleged fraudulent real estate transactions. Consequently, they have not alleged an enterprise for purposes of RICO. Without a proper allegation of an enterprise, neither the § 1962(c) nor the § 1962(d) claims can survive Appellees' motion to dismiss.

In its order dismissing the first amended complaint with leave to amend, the district court informed Appellants that only one more amendment to the complaint would be permitted. At that time, the district court gave Appellants a detailed and accurate listing of what had to be included in any revised complaint. Because Appellants have had ample opportunity to plead a cognizable RICO enterprise, as well as instruction from the district court, there is no reason to believe that any amendment would cure the deficiency.

Because we find that the district court's dismissal was proper on the ground that Appellants failed to allege an enterprise for purposes of RICO, we need not resolve Appellants' claim that the district court erred in dismissing the § 1962(c) claims against Appellees Marian Gabrych and Lin for failure to allege two predicate acts with sufficient particularity.

## CONCLUSION

We hold that the district court's decision to dismiss Appellants' second amended complaint was proper. We also hold that the district court's decision to dismiss the second amended complaint without leave to amend was proper.

AFFIRMED.