**Mark SALSGIVER, Plaintiff,**

v.

**AMERICA ONLINE, INC.; and Does 1 to 25, Defendants.**

**No. SA CV 00–608 DOC(ANX).**

United States District Court, C.D. California.

Oct. 13, 2000.

Robert K. Scott, John C. McCarty, Law Offices of Robert K. Scott, Newport Beach, CA, for Mark Salsgiver.

Jon D. Anderson, Gregory M. Saylin, Janine Leigh Madera, Latham & Watkins, Costa Mesa, CA, for America Online, Inc.

***ORDER GRANTING DEFENDANT'S 12(B)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT***

CARTER, District Judge.

This matter comes before the Court on Defendant America Online, Inc.'s Motion

to Dismiss Plaintiff Mark Salsgiver's First Amended Complaint. At issue is whether Plaintiff's claims arising out of his termination from Defendant's employment are viable, given that Plaintiff signed a letter agreeing that his employment was to be at will. The Court deems this motion appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7.11. Accordingly, the hearing set for October 16, 2000 at 8:30 a.m. is hereby removed from the Court's calendar. After consideration of the moving, opposing, and replying papers, as well as the First Amended Complaint and documents attached to it, the Court GRANTS Defendant's Motion to Dismiss.

## I.

## BACKGROUND

Plaintiff Mark Salsgiver was an employee of Defendant America Online, Inc. from August 1996 until April 1999, when Defendant terminated his employment. On August 1, 1996, prior to beginning work, Plaintiff signed a letter of agreement with Defendant. *See* First Am. Compl., Ex. A. The letter is from Defendant to Plaintiff, written on Defendant's letterhead and dated at the time when Plaintiff alleges his employment began. *See id.* The letter officially offers Plaintiff a job as a Senior Software Engineer and sets forth his compensation, consisting of salary and stock options. *See id.* The letter discusses health plans and new hire paperwork and requests that Plaintiff sign and return one copy of the letter. *See id.* The letter states that Plaintiff will be required to sign a non-disclosure agreement. *See id.* The letter bears Plaintiff's signature. *See id.* The letter does not make any statements to the effect that the terms and conditions of employment are subject to change. Fi-

nally, the letter states that Plaintiff's employment was to be at will: "Your employment at America Online is at will and you or the Company are free to terminate the employment relationship at any time, with or without cause." *Id.* In his First Amended Complaint, Plaintiff alleges that he "was under the belief that he was required to sign" this letter. First Am. Compl. ¶ 5.

As this letter indicates, Plaintiff was to be compensated through both salary and stock options. Plaintiff alleges that his salary was lower than what he had been receiving at his previous employment and that it was lower than the salary he could command from other employers.[1] Plaintiff alleges that he accepted Defendant's offer of employment, notwithstanding the lower salary, because of the promised stock options. Plaintiff also alleges that on several occasions during his employment, he and other employees expressed dissatisfaction with the non-competitiveness of Defendant's salaries, and on these occasions Defendant induced Plaintiff and other employees to remain as employees by reminding them of the value of their stock options.

Defendant gave stock options to Plaintiff in 1996, 1997, and 1998. Approximately four months after Plaintiff's employment began, in November 1996, Defendant gave Plaintiff options to purchase 2,000 shares of common stock in Defendant. The options were to vest in equal installments over a four-year period. *See* First Am. Compl., Ex. B. In September 1997, Defendant gave Plaintiff options to purchase 750 shares of common stock in Defendant. These options also were to vest in equal installments over a four-year period. *See* First Am. Compl., Ex. F. In September

---

1. The letter of agreement indicates that Plaintiff's salary was $2,833.34 "semi-monthly." First Am. Compl., Ex. A. As it must when ruling on a motion to dismiss, the Court assumes that Plaintiff's allegation that this salary was below market rate is correct.

1998, Defendant gave Plaintiff options to purchase 1000 shares of common stock in Defendant. These options also were to vest in equal installments over a four-year period. *See* First Am. Compl., Ex. G.

Some of these options vested prior to Plaintiff's termination in April 1999. The first group of options from the 1996 grant vested in September 1997. Plaintiff exercised the options, which had a value of $25,000. Additional options, presumably the second group of options from the 1996 grant and the first group of options from the 1997 grant, vested in the fall of 1998. Plaintiff exercised these options, which had a value of $130,000. If Plaintiff's employment had not been terminated in April 1999, more options would have vested in September 1999. According to Plaintiff, when exercised these options would have had a value of $3.8 million. Again according to Plaintiff, the options that were scheduled to vest in 2000, 2001, and 2002 also would have had values of over a million dollars when exercised.

The grants of options to Plaintiff all referenced three documents, a 1992 Employee, Director and Consultant Stock Option Plan ("Plan"), a 1992 Employee, Director and Consultant Stock Option Plan Description ("Plan Description"), and a Non–Qualified Stock Option Agreement ("NQSO Agreement"). Defendant provided Plaintiff with copies of these documents, and Plaintiff has attached copies of these documents to his First Amended Complaint. *See* First Am. Compl., Exs. C; D; E. Each of these documents provides that when an employee is terminated "for cause," the employee forfeits any outstanding vested but unexercised options. *See* First Am. Compl., Ex. C at 6–7; Ex. D at 7; Ex. E at 3. Each of these documents also provides that when an employee is terminated "other than 'for cause,'" the employee may exercise options that have

vested as of the date of termination. The Plan provides:

> A Participant who ceases to be an employee ... of the Company or of an Affiliate (for any reason other than termination "for cause", Disability, or death for which events there are special rules in Paragraphs 11, 12, and 13, respectively), may exercise any Option granted to him or her to the extent that the right to purchase Shares has accrued on the date of such termination of service....

First Am. Compl., Ex. C at 6. Using nearly identical language, the Plan Description provides:

> A Participant who ceases to be an employee ... of the Company or of an Affiliate (for any reason other than termination "for cause", Disability, or death) may exercise any Option granted to him or her to the extent that the right to purchase Shares has accrued on the date of such termination of service....

First Am. Compl., Ex. D at 6. Similarly, the NQSO Agreement provides:

> If the Participant ceases to be an employee ... of the Company or of an Affiliate (for any reason other than death or Disability or termination for "cause" as defined in the Plan), the Option may be exercised within ninety (90) days after the date the Participant ceases to be an employee ... of the Company or an Affiliate, or within the originally prescribed term of the Option, whichever is earlier, but may not be exercised thereafter. In such event, the Option shall be exercisable only to the extent that the right to purchase Shares under this Agreement or the Plan has accrued and is in effect at the date of such cessation of employment....

First Am. Compl., Ex. E at 2. Thus, all of the documents given to Plaintiff regarding his stock options explicitly set forth what

will happen in the event that an employee who holds options is terminated for cause and also what will happen in the event that an employee who holds options is terminated for any reason other than for cause. In the latter case, the employee could exercise any options that had vested as of the date of termination, but would forfeit any options that had not vested.

These three documents contain other language regarding the relationship of the stock options to Plaintiff's employment. In a paragraph entitled "Employment or Other Relationship," the Plan provides:

Nothing in this Plan or any Option Agreement shall be deemed to prevent the Company or an Affiliate from terminating the employment ... of a Participant, nor to prevent a Participant from terminating his or her own employment ... or to give any Participant a right to be retained in employment or other service by the Company or any Affiliate for any period of time.

First Am. Compl., Ex. C at 11. The Plan Description contains a nearly identical paragraph. *See* First Am. Compl., Ex. D at 10. The NQSO Agreement similarly provides, "The Company is not by the Plan or this Option or any other agreement obligated to continue the Participant as an employee ... of the Company." First. Am. Compl., Ex. E at 6.

Notwithstanding the employment agreement signed by him and the language of the documents governing the stock options, Plaintiff alleges that he and Defendant had agreed that he would not be terminated without cause prior to the vesting of the options. According to the First Amended Complaint, Plaintiff had accepted employment with Defendant at a salary that was below market rate only because of the promised stock options. It was Plaintiff's belief that Defendant knew that Plaintiff continued in Defendant's employment only because of the promised options

and that therefore a promise from Defendant not to terminate him prior to the vesting of the options without good cause arose from the situation. The First Amended Complaint states:

Plaintiff further believed that in light of the promises made regarding stock options that defendant AOL would not terminate his employment without good cause prior to the vesting of the promised stock options. After all, defendant AOL recognized that plaintiff was making and could make a better salary with his prior employer or other companies but induced plaintiff to come to work for AOL because of the vesting of stock options that could make up for the lesser salary depending on the value of the stock at the time of vesting. . . . Plaintiff was under the belief that without regard to the contents of [the Plan, Plan Description, and NQSO Agreement] the overriding agreement was that since he accepted a lower salary in exchange for the future vesting of stock that defendant AOL would act in good faith and would do nothing to prevent plaintiff from getting the benefit of the bargain—the stock—unless there was good cause.

First Am. Compl. ¶¶ 5, 6. Specifically regarding the Plan, Plan Description, and NQSO Agreement, Plaintiff alleges that they are "ambiguous and sometimes inconsistent" and that the "distinction between termination for 'cause' and termination without cause" in these documents "was consistent with plaintiff's belief that despite the language of the [original letter of agreement regarding his employment] that he would not be terminated without good cause prior to the vesting of his stock options." First Am. Compl. ¶ 6. Plaintiff further alleges that after he expressed to his immediate supervisor in April 1997 that he was unsatisfied working at Defendant for the salary he was receiving, she en-

couraged him to remain by highlighting the value of the options. According to Plaintiff, "Whatever possible lack of clarity previously existed regarding a need for 'good cause' was now changed: Any prior agreement that may have existed as to plaintiff's at-will status was gone or modified in that plaintiff wouldn't be terminated without cause prior to the vesting of plaintiff's stock options." First Am. Compl. ¶ 7. Similarly, Plaintiff alleges that statements made by officers of Defendant in presentations to groups of employees that they should stay at Defendant even if they felt their salaries were low because of the value of stock options created "a different understanding than whatever 'at-will' agreement which may have been made at the beginning of his employment." First Am. Compl. ¶ 10. In addition, the First Amended Complaint alleges that Plaintiff received "representations of secure employment." First Am. Compl. ¶ 11.

According to Plaintiff, during his employment he received good evaluations and performance-based bonuses. Nonetheless, Defendant terminated him in April 1999. Plaintiff alleges that Defendant terminated him in order to avoid having to vest the remaining option grants. Plaintiff filed a Complaint in Superior Court for the State of California, County of Orange, alleging breach of contract and related claims. Defendant removed the action to this Court on the grounds that Plaintiff and Defendant are diverse and that Plaintiff seeks more than $75,000 in damages. Defendant then moved to dismiss four of Plaintiff's claims for failure to state a claim. The Court granted Defendant's motion, holding that the letter of agreement was fully integrated and that by its express terms Plaintiff was an at-will employee. The Court allowed Plaintiff leave to amend some of the dismissed claims. Plaintiff filed a First Amended Complaint, which asserts five claims: (1) breach of express contract; (2) breach of implied covenant not to ter-minate without good cause; (3) breach of the implied covenant of good faith and fair dealing; (4) fraud; and (5) promissory estoppel. Defendant now moves to dismiss the entire First Amended Complaint for failure to state a claim.

## II.

## DISCUSSION

Defendant argues that Plaintiff has not cured the deficiencies of his original Complaint. According to Defendant, all of Plaintiff's claims fail because he was an at-will employee who could be terminated at any time, with or without cause.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint can be dismissed when the plaintiff's allegations fail to state a claim upon which relief can be granted. The court must construe the complaint liberally, and dismissal should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990) (stating that a complaint should be dismissed only when it lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory). The court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *See Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir.1993); *Balistreri*, 901 F.2d at 699; *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). Documents attached to the complaint can be considered on a motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896

F.2d 1542, 1555 n.19 (9th Cir.1990). Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *See Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir.1996); *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987).

## B. Application

### 1. Contract Claims

■ Plaintiff claims that his termination violated (1) an express contract; (2) an implied covenant not to terminate without good cause; and (3) an implied covenant of good faith and fair dealing. When an at-will contract exists, there can be no implied covenant not to terminate without good cause and a termination without cause will not violate the implied covenant of good faith and fair dealing. *See Guz v. Bechtel Nat'l, Inc.,* 24 Cal.4th 317, 350–51, 100 Cal.Rptr.2d 352, 375–76, 8 P.3d 1089 (2000). Thus, if Plaintiff's employment was at will, he cannot state any of these claims, because Defendant would have had the right to terminate Plaintiff at any time, for any reason.[2]

■ In California, employment is presumed to be at will. *See* Cal. Lab.Code § 2922 (West 1989). This presumption can be rebutted only with evidence showing that the parties expressly or impliedly agreed to limit the employer's right to terminate. *See Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 677, 254 Cal.Rptr. 211, 223, 765 P.2d 373 (1988). Here, Plaintiff argues that he has alleged express statements limiting Defendant's right to terminate, but in fact nowhere in the First Amended Complaint has Plaintiff alleged a single express limitation of Defendant's right to terminate at will. Plaintiff has made no allegation that Defendant ever,

either orally or in writing, explicitly stated that it would not terminate him except for cause prior to the vesting of his options. Furthermore, Defendant here does not need to resort to the presumption of at-will employment, because the letter of agreement between Plaintiff and Defendant expressly and explicitly states: "Your employment at America Online is at will and you or the Company are free to terminate the employment relationship at any time, with or without cause." First Am. Compl., Ex. A. The at-will nature of Plaintiff's employment is not contradicted by any of Plaintiff's allegations, and in fact the express and explicit statements in the documents governing the option grants further reinforce and repeat the at-will nature of Plaintiff's employment. That the Plan, Plan Description, and NQSO Agreement explain what will happen to Plaintiff's options if Plaintiff is terminated without cause clearly suggests that termination without cause is a possibility.

■ In the absence of an express agreement not to terminate without good cause, Plaintiff can only argue that there was an implied-in-fact agreement not to terminate without good cause. The gist of the First Amended Complaint is that Defendant's promises to give Plaintiff stock options implied that Defendant would not terminate Plaintiff without cause before those options vested. In a recent case, the California Supreme Court held that an implied-in-fact agreement not to terminate without good cause cannot arise solely from an employee's many years of successful service, but the court affirmed that it is possible for an implied-in-fact agreement sufficient to overcome the statutory presumption of at-will employment to arise. *See Guz,* 24 Cal.4th at 336–44, 100 Cal. Rptr.2d at 365–71, 8 P.3d 1089. However,

---

**2.** This right is limited by provisions of law not alleged or applicable here, such as civil rights laws and California's cause of action for termination in violation of public policy.

an implied-in-fact agreement not to terminate without good cause cannot arise when there is an express agreement providing that employment is at will. *See id.* at 337, 100 Cal.Rptr.2d at 366, 8 P.3d 1089 ("Where there is no express agreement, the issue is whether other evidence of the parties' conduct [creates an implied-in-fact agreement]."). An implied-in-fact contract requiring cause for termination is fundamentally inconsistent with an express at-will contract, and the terms of the express contract cannot be rewritten by implications arising from later conduct. *See Camp v. Jeffer, Mangels, Butler, & Marmaro,* 35 Cal.App.4th 620, 630–31, 41 Cal. Rptr.2d 329, 334–35 (1995) (holding that the plaintiffs' "express at-will agreement precluded the existence of an implied contract requiring good cause for termination"). Thus, because Plaintiff and Defendant had expressly agreed to an at-will employment relationship, Plaintiff cannot claim that a contrary, implied agreement existed.

Plaintiff also argues that the granting of the options in 1996 without issuing a new letter of agreement affirming that his employment was at will indicates that a new, non-at-will employment agreement was entered into. *See* Pl.'s Opp'n to Mot. to Dismiss at 8:1–5. This argument fails for three reasons: (1) the option grants and related documents were not themselves an employment agreement and thus they did not supersede the existing employment agreement; (2) the option grants and related documents in no way contradict the existing at-will agreement; and (3) the option grants and related documents in fact expressly and explicitly affirm that Plaintiff could be terminated for reasons other than for cause. *See* First Am. Compl., Ex. C at 6–7, 11; Ex. D at 6–7; Ex. E at 2–3, 6. Plaintiff also argues that the fact that the option documents contained provisions discussing both termination for cause and termination other than for cause indicates that the original letter of agreement was no longer in effect, because "no distinction would be necessary [ ]for [']cause' terminations since 'cause' was not necessary under the terms of the 1996 letter." Pl.'s Opp'n to Mot. to Dismiss at 11:11–14. However, an employer can draw a distinction between a termination that happens for cause and one that does not without changing the at-will nature of employment. The provisions of the option documents demonstrate that Defendant set up a general rule for what would happen to the options of an employee terminated other than for cause (any vested options could be exercised within three months) and also created a less-generous rule for what would happen to the options of an employee terminated for cause (any unexercised options would be forfeited). These provisions are perfectly consistent with an at-will employment relationship.

Plaintiff asserts that the doctrine of promissory estoppel supports his contract claims. Plaintiff's argument consists of (1) a quote from a case that states that a modification of a contract can be upheld on a promissory estoppel theory; and (2) the following statement: "Under the allegations of the First Amended Complaint, the doctrine of promissory estoppel requires the modification of the July, 1996 'letter of agreement' to prevent injustice." Pl.'s Opp'n to Mot. to Dismiss at 12:22–23. Plaintiff's argument seems to be that Defendant later promised not to terminate Plaintiff without good cause and is therefore estopped from asserting that the original employment agreement was not modified. This argument fails because nowhere in the First Amended Complaint does Plaintiff allege that Defendant ever expressly stated that it would terminate him only with cause. If there is no promise, there is no promissory estoppel.

Thus, Defendant had the right to terminate Plaintiff at will and Plaintiff cannot assert that his termination violated any agreements between him and Defendant. Although not a part of its legal analysis, the Court has considered the possibility of inequities arising when employers recruit employees by offering them enticing stock options and then later take other actions that prevent the employees from liquidating the options, such as the actions to which Plaintiff objects. However, sought-after, recruited employees are not without bargaining power. They can contract with employers for the right to be terminated only for cause, or for options to vest on a different schedule, or for some or all of the promised options to continue to vest even after termination, or for some other type of payout in the event of termination.

Plaintiff has not cured the failings of his original Complaint. In its Order granting Defendant's earlier motion to dismiss, the Court stated that "Plaintiff could go forward with his claims only if he alleged that (1) the letter of agreement was no longer in force; and (2) he and Defendant had modified that agreement by entering into a different, express agreement at a later date regarding termination." Civil Minutes Granting Def.'s 12(b)(6) Mot. to Dismiss Pl.'s First, Second, Third, and Fourth Claims at 6. Although Plaintiff argues that he has made these allegations, he has not. Careful study of the First Amended Complaint reveals no instances in which Plaintiff alleges that Defendant expressly stated, either orally or in writing, that it would not terminate Plaintiff without cause. Plaintiff has alleged that Defendant promised him options and encouraged him to stay in Defendant's employment even though Plaintiff was not satisfied with the salary because of these options, but such representations are not express statements regarding termination with or without cause. Plaintiff may have inferred from these statements that he would not be fired, but inferences are not express statements, an inference drawn by one party to a contract is not an agreement between both parties, and Plaintiff cannot turn inferences and implications into express agreements by calling them that.

Defendant's Motion is GRANTED as to Plaintiff's first three claims.

### 2. Fraud Claim

Plaintiff's fraud claim asserts that when Plaintiff was hired and at additional times during his employment, agents and employees of Defendant made representations "to induce plaintiff to commence employment with AOL and to continue employment with AOL with a salary lower than he was otherwise entitled based on promises regarding bonuses, stocks, and stock options." First Am. Compl. ¶ 29. These representations were that Plaintiff would receive stock options and that the value of these options when vested and exercised could compensate for Plaintiff's below-market salary, depending on the value of the stock at the time. *See* First Am. Compl. ¶¶ 4–12, 29. According to Plaintiff, these promises were false because Defendant did not intend to carry them out. The First Amended Complaint alleges that the agents and employees of Defendant "made the promises intending to fraudulently induce plaintiff to commence work and continue working with defendant AOL and did so with the knowledge that defendants did not intend to perform these promises." First Am. Compl. ¶ 29. Thus, Plaintiff's fraud claim is not dependent on Plaintiff's contention, rejected by the Court, that Defendant promised not to terminate him without cause. However, the fraud claim also fails.

The allegations of the First Amended Complaint demonstrate that Defendant carried out the promises referred to above. Defendant never promised not to fire

Plaintiff without good cause. In fact, Defendant expressly and explicitly affirmed in several written documents that it had the right to fire Plaintiff without cause and that it had not promised to keep Plaintiff in its employment for any particular period of time. In the context of this at-will agreement, Defendant's simultaneous promises to give Plaintiff options that could be exercised after vesting are indeed an incentive for Plaintiff to continue working for Defendant, but they are no more. Defendant did exactly what it promised. On three occasions, it gave Plaintiff options. These grants indicated when the options would vest, and the options vested as scheduled up until the date when Defendant was terminated. Defendant never promised to allow options to vest after the termination of Plaintiff's employment, and in fact it expressly indicated in the option agreements that they would not vest after a termination.

Because the First Amended Complaint demonstrates that Defendant carried out the promises it made to Plaintiff, Plaintiff has failed to state a claim for fraud. Defendant's Motion is GRANTED as to Plaintiff's fourth claim.

### 3. Estoppel Claim

■ Plaintiff's estoppel claim asserts that Defendant should be estopped from denying the promises it made to Plaintiff. As the First Amended Complaint reveals no promises not to terminate Plaintiff without good cause, Defendant is not estopped from claiming that it could terminate Plaintiff without cause. As the First Amended Complaint reveals that Defendant carried out its promises to give Plaintiff options that would vest according to a set schedule, it has not denied those promises, and Plaintiff's estoppel claim fails. Defendant's Motion is GRANTED as to Plaintiff's fifth claim.

### III.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss. Plaintiff's First Amended Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.