**Ralph GONZALES, et al.**

v.

**LLOYDS TSB BANK, PLC, et al.**

**No. CV 06–1433 DSF (JTLx).**

United States District Court,
C.D. California.

June 7, 2006.

Albert Q. Giang, Andrew A. Esbenshade, Christopher G. Caldwell, Jeanne A. Fugate, Caldwell Leslie and Proctor, Graham B. Lippsmith, Thomas V. Girardi, Girardi & Keese, Los Angeles, CA, for Ralph Gonzales, Alisa King, Jeffrey King, Emmett S. Elliott, Jr.

Kathy McFarland, Marc J. Gottridge, Lovells, New York, NY, Marc Marmaro, Matthew David Hinks, Jeffer Mangels Butler & Marmaro, Los Angeles, CA, for Lloyds TSB Bank, P.L.C.

Charles M. Stern, Julia W. Brand, Matthew S. Menzie, Katten Muchin Zavis Rosenman, Los Angeles, CA, for Man Financial Limited.

Alia S. Haddad, Efren A. Compean, Stephen J. Tully, Trang T. Tran, Garrett and Tully, Pasadena, CA, for Kaplan Swicker and Simha Accountancy Corporation, A California Corporation.

Order GRANTING in part and DENYING in part Defendant Lloyd's TSB Bank plc's Motion to Dismiss With Leave to Amend

DALE S. FISCHER, District Judge.

## I. INTRODUCTION

Defendant Lloyds TSB Bank plc's ("Lloyds") Notice of Motion and Motion to Dismiss the First Amended Complaint; and Memorandum of Points and Authorities in Support Thereof ("Motion"), were filed on April 13, 2006: Defendant's Notice of Re–Filing of Defendant Lloyds TSB Bank's Motion to Dismiss was filed on April 19, 2006.

Plaintiffs' Opposition to Defendant Lloyds TSB Bank's Motion to Dismiss under Federal Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure was filed on May 15, 2006. Plaintiffs' Amended Opposition ("Opp'n"); and Declaration of Andrew Esbenshade, were filed on May 24, 2006.

Defendant Lloyds TSB Bank plc's Reply Memorandum of Points and Authorities in Further Support of Motion to Dismiss the First Amended Complaint Pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6) ("Reply"), was filed on May 26, 2006.

The Court deems this matter appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7–15.

## II. *FACTUAL ALLEGATIONS*

In or around 1999, Zvi Leichner and Moshe Leichner ("Leichners") set up two companies, Midland Euro Exchange, Inc. and Midland Euro, Inc. (collectively, "Midland Entities"), to trade foreign currencies. (FAC ¶ 18.)[1] The Leichners and their employees allegedly told investors in person or over the phone that their investment would generate guaranteed monthly profits between 2–4%. (*Id.* at ¶ 19.) These representations were repeated to investors in literature sent by mail. (*Id.*)

Based on these representations, approximately 300 investors invested more than $135 million with the Leichners between approximately July 2000 and December 2002. (*Id.* at ¶ 21.) Although the Leichners promised that investment funds would be used only for trading foreign currency, less than 20% of the funds were actually invested in foreign currency. (*Id.* at ¶ 21.) The Leichners commingled the investors' funds in accounts belonging to the Midland Entities and used the commingled funds to make payments to other investors. (*Id.* at ¶ 22.) The Leichners assured investors that their investments were doing well by mailing monthly account statements that were generated arbitrarily. (*Id.* at ¶ 23.)

In or about September 1999, the Midland Entities opened at least two accounts with Lloyds in the name of Midland Euro–Exchange, Inc. (*Id.* at ¶ 40.) By June 2001, the Midland entities opened two more accounts with Lloyds in the name of Midland Euro, Inc. (*Id.* at ¶ 41.) By September of 2001, the Midland Entities requested that all funds be moved into the Midland Euro–Exchange, Inc. accounts. (*Id.*) Individuals associated with the Midland Entities—including Moshe Leichner and their counsel, Michael Cardenas—also held accounts with Lloyds. (*Id.* at ¶ 42.)

As much as 90 percent of all investor funds obtained by the alleged Ponzi scheme was wired by investors directly into the Midland Entities' accounts. (*Id.* at ¶ 43.) Lloyds was also responsible for wiring much of the commingled funds out of the accounts in aid of the Ponzi scheme. (*Id.* at ¶ 44.) By wiring these purported "profits" to investors, Plaintiffs allege that Lloyds was instrumental in lulling investors into a false sense of security. (*Id.* at ¶ 2.) Lloyd's senior manager, Andrew Connor, was aware of the suspicious cash flow in and out of Lloyds. (*Id.* at ¶ 45.) Moreover, on or around January 15, 2002, Mr. Connor also learned that the Midland Entities' memberships in the National Futures Association ("NFA") and Commodity Futures Trading Associations ("CFTA") were suspended. (*Id.* at ¶ 46.)

After learning of the suspensions, Mr. Connor wrote in a memorandum that the "exceptional returns for their clients ... and that they deal with significant amounts of client monies with both small and large investors involved" made him nervous. (*Id.* at ¶ 47.) Moreover, he wrote: "If they are not reinstated, or their legal council cannot provide me with significant comfort we have to consider whether this is a relationship we want at Commer-

---

**1.** The Court accepts the allegations of the First Amended Complaint as true for the purpose of this Motion.

cial Banking." (*Id.*) On or around January 15, 2002, Mr. Connor contacted Moshe Leichner and Mr. Cardenas to discuss the suspensions. (*Id.* at ¶ 49.) After the conversation, he admitted that "there were certainly things that I still need to understand." (*Id.*)

The suspensions were not lifted, and Lloyds' concerns were never addressed. (*Id.* at 50.) Lloyds took no action with regard to the remaining Midland Entities' account, which continued to be used as part of the alleged Ponzi scheme. (*Id.*) Plaintiffs allege that Lloyds' almost 250-year old venerable reputation added a veneer of respectability to the Leichners' and Midland Entities' venture. (*Id.* at ¶ 39.)

Between January 2002 and November 2002, Mr. Tanella alone wired almost $38 million into the Midland Entities' account. (*Id.*) Beginning in or around December 2002, Mr. Tanella made several requests that his money be returned. (*Id.* at ¶ 52.) On or about January 2003, after his requests were met with silence, he contacted Lloyds by telephone to inquire about his investment. (*Id.* at ¶¶ 52, 111(b).) Lloyds deliberately misled him, and continued to assist the Leichners and Midland Entities. (*Id.* at ¶ 53, 111(b).)

In or about June 2003, the Leichners signed plea agreements and pled guilty to felony charges of wire fraud and money laundering. (*Id.* at ¶ 89.) All Defendants—Lloyds, Man Financial, and Kaplan—actively and affirmatively assisted in the Ponzi scheme and helped conceal it. (*Id.* at ¶ 92.) As a proximate result of Defendants' conduct, Plaintiffs have suffered damages in an amount believed to exceed $90,000,000. (*Id.* at ¶ 95.) Plaintiffs bring claims against all Defendants for (a) aiding and abetting breach of fiduciary duty; (b) aiding and abetting fraud; (c) violation of Cal. Bus. & Prof.Code § 17200; (d) violation of 18 U.S.C. § 1962(c); and (e) civil conspiracy.

## III. *LEGAL STANDARD*

A court can dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Federal Rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. 99 (footnote omitted). *See also Swierkiewicz v. Sorema*, 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (A complaint "must contain only a short and plain statement of the claim showing the pleader is entitled to relief"); *Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir.2004). Dismissal is appropriate only if the plaintiff fails to assert a cognizable legal theory or to allege sufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988).

The plaintiff bears the burden of pleading sufficient facts to state a claim. Courts will not supply essential elements of a claim that are not initially pled. *Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988). In ruling on a motion to dismiss, the Court must accept as true all material factual allegations in the complaint and must construe them in the light most favorable to the plaintiff. *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir.1997). "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Sprewell v. Golden State*

*Warriors,* 266 F.3d 979, 988 (9th Cir.2001) (internal citations omitted). Dismissal is proper if a complaint is vague, conclusory, general, or fails to set forth any material facts in support of the allegation.

Allegations of fraud are excepted from the "notice pleading" standard of Rule 8(a)(2). *See North Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 583 (9th Cir.1983); *Swierkiewicz,* 534 U.S. at 513, 122 S.Ct. 992; *Leatherman,* 507 U.S. at 168, 113 S.Ct. 1160. Rule 9(b) provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989) (citations omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994) (superseded by statute on other grounds). "Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess v. Ciba–Geigy Corp.,* 317 F.3d 1097, 1103 (9th Cir.2003).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986).

Leave to amend should be granted even if the plaintiff did not request leave, unless it is clear that the complaint cannot be cured by the allegation of different facts. *Doe v. U.S.,* 58 F.3d 494, 497 (9th Cir. 1995).

## IV. *LEGAL ANALYSIS*

### A. *Aiding & Abetting*

Plaintiffs claim Defendant aided and abetted breach of fiduciary duty and fraud. Liability may ... be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person. *Fiol v. Doellstedt,* 50 Cal.App.4th 1318, 1325–26, 58 Cal.Rptr.2d 308 (1996) (citation omitted; ellipsis in original). "California law requires that a defendant have actual knowledge of tortious activity before it can be held liable as an aider and abettor, and federal courts have found that the phrase 'knew or should have known' does not plead actual knowledge." *Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101, 1118–19 (C.D.Cal.2003). "The unifying principle under either theory of recovery, civil conspiracy or aiding and abetting, is that [defendant's] liability depends upon the actual commission of a tort." *Richard B. LeVine, Inc. v. Higashi,* 131 Cal. App.4th 566, 574, 32 Cal.Rptr.3d 244 (2005). Defendant does not challenge Plaintiffs' allegation that the Leichners' and Midland Entities' conduct resulted in a breach of fiduciary duty and fraud. The Court's analysis therefore is focused on whether Defendant had knowledge of this tortious conduct.[2]

---

**2.** Defendant does not argue that Plaintiffs have failed to allege substantial assistance, and the Court does not address that element.

As to Defendant's knowledge of the breach of fiduciary duty, Plaintiffs allege: The Defendants at all material times had actual knowledge of the Leichners' and the Midland Entities' fiduciary duties to Plaintiffs with respect to Plaintiffs' investments and the manner in which those investments were treated by the Leichners and the Midland Entities. The Defendants at all material times knew that the Leichners and the Midland Entities were violating their fiduciary duties to their clients

. . . .

(*Id.* at ¶ 92.) Plaintiffs have adequately pled the element of knowledge.

■ Defendant also contends that Plaintiffs' allegations fail to satisfy the pleading requirements of Rule 9(b). *See, e.g., Federal Sav. & Loan Ins. Corp. v. Musacchio*, 695 F.Supp. 1053, 1058 (N.D.Cal.1988) ("Generally, [Rule 9(b) ] does not extend to allegations of breach of duty. However, when the conduct underlying the breach of fiduciary duty is also alleged to constitute fraud, the requirement does apply."). Plaintiffs' argument that Defendant had knowledge of the Ponzi scheme is supported by their allegation that: "[A]s Lloyds well knows, 'exceptional returns' for clients and the commingling of 'significant amounts of client monies with both small and large investors involved' are two hallmarks of a Ponzi scheme." (FAC ¶ 48.) Despite Lloyds' senior manager's acknowledgment that the Midland Entities' accounts displayed these two characteristics, (*id.* at ¶ 48), Plaintiffs allege that "[m]illions of dollars continued to be moved into and out of the account, as Lloyds simply continued to knowingly assist in the ongoing fraud." (*Id.* at ¶ 50.) Because Rule 9(b) provides that "malice, intent, knowledge, and other condition of mind may be averred generally," and because Plaintiffs have alleged facts in support of their allegation of knowledge, the Court finds that Plaintiffs have more than adequately satisfied Rule 9(b)'s pleading requirements for knowledge. *See, e.g., Neilson*, 290 F.Supp.2d at 1120 ("courts have found pleadings sufficient if they allege generally that defendants had actual knowledge of a specific primary violation").

■ Defendant argues further that Plaintiffs' claim must fail because "[a]bsent a legal duty, Lloyds TSB cannot, as a matter of law, be held responsible for aiding and abetting the Leichners' breaches of fiduciary duty or fraud." (Motion 24:14–16.) However, this Court agrees with Judge Morrow's conclusion in *Neilson* that "[u]nder California law, [a claim of aiding and abetting] does not require that the aider and abettor owe plaintiff a duty so long as it knows the primary wrongdoer's conduct constitutes a breach of duty, and it substantially assists that breach of duty." *Neilson*, 290 F.Supp.2d at 1127. *See also Casey v. U.S. Bank Nat'l. Assoc.*, 127 Cal.App.4th 1138, 1145 n. 2, 26 Cal.Rptr.3d 401 (2005) ("For the reasons articulated so well in the *Neilson* opinion, we reject the banks' attempt to overlay the civil conspiracy 'independent duty' requirement onto an aiding and abetting claim."). Defendant can be liable for aiding and abetting a breach of fiduciary duty, even if it did not personally owe a duty to the injured party.

■ Plaintiffs also claim Defendant aided and abetted fraud. Plaintiffs' allegation that the "Defendants knew that the Leichners and Midland Entities were engaging in fraud[,]" satisfies the pleading requirements of knowledge. (FAC ¶ 99); *see Casey*, 127 Cal.App.4th at 1148, 26 Cal. Rptr.3d 401 (the key inquiry is whether the complaint "establish[es] that the banks had actual knowledge of the primary violation in which they purportedly participated"); *cf. Ryan v. Hunton & Williams*, No. 99–CV–5938, 2000 WL 1375265, *9, 2000 U.S. Dist. LEXIS 13750 at *26

(E.D.N.Y. Sept. 20, 2000) ("Allegations that Chemical suspected fraudulent activity," as opposed to allegations that the party knew of the fraudulent activity, "do not raise an inference of actual knowledge of Wolas's fraud."). In further support of their allegation that Defendant had knowledge of the Ponzi scheme, Plaintiffs allege that Defendant knew the hallmark characteristics of a Ponzi scheme, and identified these characteristics in the Midland Entities' accounts. (FAC ¶¶ 47, 48.) For the reasons identified in the discussion of aiding and abetting breach of fiduciary duty, Plaintiffs' allegations satisfy 9(b)'s pleading requirements for knowledge.

### B. *Conspiracy*

█ "The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of a common design." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994) (quotations and citation omitted). "The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1582, 47 Cal.Rptr.2d 752 (1995). Knowledge of the planned tort must also be combined with intent to aid in its commission. *See id.*

> Plaintiffs allege:
> Defendants Lloyds, Man Financial, and Kaplan, and each of them, knowingly and willfully conspired and agreed among themselves, or in the alternative,

later joined the ongoing conspiracy and fully ratified all past actions and the purpose of the conspiracy and agreed, *inter alia,* as follows:

(a) To form the Enterprise alleged above and to set up a series [of] entities to be known as the Midland Entities for the purpose of soliciting funds from small unsophisticated investors and defrauding such investors;

(b) To misappropriate and convert the monies invested by Plaintiffs in the Midland Entities;

(c) To defraud Plaintiffs of their investments and to breach duties owed to Plaintiffs; and

(d) To derive other profits and benefits through the pattern of racketeering activity and other fraud alleged above.

(FAC ¶ 118.)

█ "[U]nder federal law a plaintiff must plead, at a minimum, the basic elements of a civil conspiracy if the object of the conspiracy is fraudulent." *Wasco Products, Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir.2006). This allegation adequately pleads a claim of conspiracy.

Defendant contends the "conspiracy claim must be dismissed as against Lloyds TSB because as a matter of law, a party cannot conspire to breach a duty it does not owe." [3] (Motion 27:27–28). However, Plaintiffs bring a claim for conspiracy to commit fraud—this does not involve the breach of a duty peculiar to the other

---

**3.** Defendant cites to *Casey,* 127 Cal.App.4th at 1149, 26 Cal.Rptr.3d 401, noting that "under California law, a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder." However, the court in *Casey* also noted that "it is equally clear that if the Trustee can allege the banks knew the DFJ Fiduciaries were stealing corporate funds and knowingly assisted ... those allegations would suffice ...." *Id.* at 1152, 26 Cal.Rptr.3d 401. In any case, Defendant's arguments are misplaced because the court in *Casey* made these comments in regards to a claim for aiding and abetting breach of fiduciary duty.

Defendants. *See, e.g., Kidron,* 40 Cal. App.4th at 1597, 47 Cal.Rptr.2d 752 ("A nonfiduciary as well as a fiduciary owes a duty not to engage in actual fraud ...."); *Qwest Commc'ns Corp. v. Weisz,* 278 F.Supp.2d 1188, 1193 n. 4 (S.D.Cal.2003) ("Indeed, everyone owes a duty not to commit an intentional tort against anyone.").

### C.  § 1962(c) (RICO)

■  18  U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

A violation of section 1962(c) is established by "proof of '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *United States v. Fernandez,* 388 F.3d 1199, 1221 (9th Cir.2004) (citation omitted).

#### 1.  *Enterprise*

■  An enterprise includes: "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity ...." 18 U.S.C. § 1961(4).  An associated-in-fact enterprise is established by "proof (1) of an ongoing organization, formal or informal, (2) which exhibits a hierarchical or consensual decision-making structure beyond that inherent in the alleged racketeering activity, and (3) in which the various associates function as a continuing unit." *Fernandez,* 388 F.3d at 1223.  An organization must be " 'an entity separate and apart from the pattern of [racketeering] activity in which it engages.' " *Chang v. Chen,* 80 F.3d 1293, 1298 (9th Cir.1996) (citations omitted).  There must be an "existence beyond

that which is merely necessary to commit the predicate acts of racketeering." *Id.* at 1299.  The entity "must exhibit 'some sort of structure ... for the making of decisions, whether it be hierarchical or consensual.' " *Id.*

■  "[C]orporate entities ha[ve] a legal existence separate from their participation in the racketeering, and the very existence of a corporation meets the requirement for a separate structure." *United States v. Feldman,* 853 F.2d 648, 660 (9th Cir.1988). Of course, the mere naming of a corporation will not satisfy the enterprise requirement if there are no allegations that the corporation was involved in the acts of racketeering. *See Chang,* 80 F.3d at 1301. Here, however, Plaintiffs allege that Defendants were involved in the racketeering activity, and that Defendant Lloyds "added a veneer of respectability to the venture." (FAC ¶ 39); *see Chang,* 80 F.3d at 1301 (appellants failed to allege that the corporation "shielded appellees from liability or detection").

■  Moreover, each Defendant corporation was also engaged in a separate and ongoing legitimate business; it was their combined efforts that furthered the enterprise.  For example, Plaintiffs contend that Defendant Man Financial was able to carry on its role in the enterprise, in part, by Lloyds' role in executing monetary transfers to it by wire.  (FAC ¶¶ 49, 111(b).)  An enterprise can be identified by its ability to engage in conduct that "would have been beyond the capacities of the individual defendants acting either singly or without the aid of their organizations." *United States v. Masters,* 924 F.2d 1362, 1367 (7th Cir.1991).  "[E]xistence of an association-in-fact is often-times more readily proven by what it does, rather than by abstract analysis of its structure." *United States,* 388 F.3d at 1224.  Plaintiffs

have adequately pled the existence of an enterprise.[4]

### 2. Conduct or Participation

■ Plaintiffs must also show that Defendant conducted or participated in the affairs of the enterprise.

> In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs. Of course, the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required.

*Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Similarly, in *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir.1993), the Ninth Circuit found that an attorney's "preparation of two letters in September 1982, the preparation of a partnership agreement in 1982, and assistance in a March, 1987 Chapter 7 proceeding, in which he again sent two letters, d[id] not suffice to impute liability under *Reves.*" Here, Plaintiffs' allegations that Defendant "allowed the Leichners to commingle their victims' assets within several Lloyds accounts ... and gave the Leichners the aura of legitimacy that they needed to continue to fool their victims," (FAC ¶ 2), are likewise insufficient. "[I]t is well established that the provision of professional services by outsiders, such as accountants, to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO, since participation requires some part in directing the affairs of the enterprise itself." *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F.Supp. 248, 254 (S.D.N.Y.1997); *see also Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F.Supp. 449, 466 (S.D.N.Y.1996) ("Many other courts faced with post-Reves § 1962(c) claims against outside professionals have agreed that providing important services to a racketeering enterprise is not the same as directing the affairs of the enterprise."). If anything, even more should be required in the context of banking services.

In light of the Ninth Circuit's holding in *Baumer*, 8 F.3d at 1342–43, where the defendant "knowingly filed a false partnership agreement in which he inflated the number of limited partners and mailed to the limited partners copies of the agreement, to create the false impression that Golden Hills was formed and operated in accordance with law," this Court finds that Defendant's provision of banking services is not enough on its own to constitute a violation of section 1962(c).[5]

---

4. Defendant contends that Plaintiffs fail to allege that the members of the alleged enterprise shared a common purpose. (Opp'n 7:1–8.) However, Plaintiffs allege that: "Defendants, motivated solely by profits and the opportunity to continue to line its own pockets, willfully turned a blind eye to a massive financial scam ...." (FAC ¶ 3.) Moreover, Plaintiffs allege that "[w]ithout Defendants' aid, the Ponzi scheme would not have grown as large nor become as pernicious as it did, nor would it have lasted nearly as long as it lasted." (*Id.* at ¶ 93.) Here, Plaintiffs satisfy the requirements of pleading a common purpose because they sufficiently allege a common goal of financial profit, and they allege that this goal was achieved through related offenses. *United States v. Cagnina*, 697 F.2d 915, 921 (11th Cir.1983) ("group of persons who had committed a variety of unrelated offenses with no agreement as to any particular crime could be convicted of a RICO offense, because they were associated for the purpose of making money from repeated criminal activity").

5. Even if Defendant is liable for aiding and abetting the Leichners' and Midland Entities' alleged racketeering acts, this is still not enough to satisfy the requirement that Defendant conducted or participated in the affairs of the enterprise. *See In Westways World*

However, Plaintiffs also allege that "on or around the first week of January 2003, Lloyds deliberately misled an investor, Mr. Tanella" in a telephone call. (FAC ¶ 111(b).) Moreover, Plaintiffs contend that Defendant engaged in wire fraud by Lloyds' accepting numerous wired money transfers from investors, and wiring the commingled funds to the Leichners' other corporations, Man Financial, offshore accounts, and investors. (*Id.*)

■■■■ Wire fraud is considered to be a form of racketeering activity. 18 U.S.C. § 1961(1). A "wire communication need not be fraudulent on its face in order to constitute an act of mail or wire fraud; even innocuous communications can qualify for this purpose so long as they are incident to an essential part of the scheme." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1330–31 (7th Cir.1994). A wire fraud violation consists of "(1) the formation of a scheme or artifice to defraud[;] (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir.1986). The requirement of specific intent is "satisfied by 'the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension,' and this intention is shown by examining the scheme itself." *Schreiber Distrib. Co.*, 806 F.2d at 1400 (citation omitted). "Allega-

tions of fraud under section 1962(c) 'must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme.' " *Moore*, 885 F.2d at 541 (citation omitted). However, the rule may be relaxed as to matters within the opposing party's knowledge. *Id.* at 540.

■■■ Plaintiffs' allegation that Defendant deliberately misled an investor is not pled with sufficient particularity. Although Plaintiffs provide the approximate date of the communication and the manner in which it took place, Plaintiffs fail to allege the nature of the exchange between Defendant and Tanella and why it was misleading. Moreover, earlier in the First Amended Complaint, Plaintiffs allege that, when contacted by Tanella, "Lloyds continued to do what it had done since the start of its relationship with the Leichners and the Midland Entities: nothing." (FAC ¶ 53.) It is unclear whether Defendant misled Tanella by failing to disclose information or by affirmatively misrepresenting information.[6] Accordingly, Plaintiffs cannot rely on this conduct as a wire fraud violation.

■■■■ Plaintiffs also allege that Defendant engaged in wire fraud on the basis of its monetary wire transfers. Plaintiffs provide a time frame for these transfers and general allegations as to the entities involved in these transfers, but no specific dates are given. Based on the on-going nature of the fraud alleged by Plaintiffs,

*Travel v. AMR Corp.*, 182 F.Supp.2d 952, 962 (C.D.Cal.2001) ("[A]lthough the Ninth Circuit has not addressed this specific issue, other courts which have allowed aiding and abetting liability under Section 1962(c) have held that those claims must still satisfy the 'operation or management' requirement:")

6. Even if Defendant did not make an affirmative representation to Tanella, "[t]he fraudulent scheme need not be one which includes an affirmative representation of fact ... it is

only necessary ... to prove that the scheme was calculated to deceive persons of ordinary prudence. Similarly, (the 'deceitful) concealment of material facts is not constructive fraud but actual fraud.' " *United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir.1980) (citation omitted). Although a claim for fraud can be based on either an affirmative misrepresentation or deceitful concealment of fact, Plaintiffs must still clearly allege which type of conduct it asserts.

this is not a fatal flaw. *See, e.g., Fed. Savs. & Loan Ins. Corp. v. Shearson–Am. Express, Inc.,* 658 F.Supp. 1331, 1337 (D.P.R.1987) ("To the extent that any specific dates pertaining to specific misrepresentations may be lacking, they are not required ... because they occurred over an extended period of time .... To the extent possible, discovery will provide those details."). Moreover, Plaintiffs allege that "Lloyds ... continued to knowingly assist the ongoing fraud" and that it "committed these acts willfully or with actual knowledge of the illegal activities." (FAC ¶¶ 49, 111.) Defendant contends that these are conclusory allegations, unsupported by the facts alleged. However, the Court finds that, viewing the allegations in a light most favorable to the Plaintiffs, it could be inferred that Defendant was aware of the Ponzi scheme. *See United States v. Lothian,* 976 F.2d 1257, 1267 (9th Cir.1992) ("Knowledge of fraudulent purpose, as an aspect of intent to defraud, need not be shown by direct evidence, but may also be established by circumstantial evidence."). In particular, Defendant was on notice of the suspensions, and expressed concerns about' several aspects of the Leichners' and Midland Entities' accounts in a written memorandum. (FAC ¶¶ 46–48.) Moreover, Defendant admitted that these concerns were not alleviated. (*Id.* at ¶ 49.) Defendant's acts of transferring the funds were committed in furtherance of the Leichners' and Midland Entities' Ponzi scheme, which was devised to deprive investors of their property. Plaintiffs have sufficiently pled a claim for wire fraud.

Next, the Court considers whether, based on these racketeering acts of wire fraud, Defendant conducted or participated in the affairs of the enterprise. "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Reves,*

507 U.S. at 184, 113 S.Ct. 1163. Plaintiffs allege that Defendant's predicate act of wire fraud "perpetuated the Ponzi scheme." (FAC ¶ 114.) Moreover, Plaintiffs allege that "each of the Defendants participated, directly and indirectly, in the conduct of the affairs of the aforesaid enterprise through a pattern of racketeering activity ...." (*Id.* at ¶ 109.) *See Gutierrez v. Givens,* 989 F.Supp. 1033, 1042 (S.D.Cal. 1997) ("While Plaintiffs' allegations against some Defendants are minimal, the Complaint does allege that all participated in the operation and management of the conspiracy.").

▮ "[T]he essence of a violation of section 1962(c) 'is the commission of those acts [of racketeering] in connection with the conduct of an enterprise.'" *Sun Sav. & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 195 (9th Cir.1987) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). "Under this 'connection' or 'nexus' requirement, the racketeering activity must in some way stem from the enterprise's activities or otherwise have some relationship to the enterprise." *Id.* Here, the acts of wire fraud were essential to furthering the conduct that the enterprise engaged in—the Ponzi scheme. *Sikes v. American Tel. & Tel. Co.,* 179 F.R.D. 342, 355 (S.D.Ga.1998) ("the predicate acts alleged to have been committed by the Defendant—mail fraud, wire fraud, and collection of unlawful debt—were allegedly committed in furtherance of the [conduct of the enterprise]"). In light of Plaintiffs' general allegations that Defendant conducted or participated in the affairs of the enterprise, and the allegations of wire fraud, Plaintiffs have satisfied their pleading requirements as to this prong.

### 3. *Pattern of Racketeering*

▮ Plaintiffs have also alleged that Defendant engaged in a pattern of racke-

teering. "In order to constitute a 'pattern,' there must be at least two acts of racketeering activity within ten years of one another." *Turner v. Cook,* 362 F.3d 1219, 1229 (9th Cir.2004). "A 'pattern' of racketeering activity also requires proof that the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.' " *Id.* Plaintiffs allege that Defendant engaged in an ongoing pattern of wire fraud beginning in early 2002 and continuing to at least early 2003. Plaintiffs allege that: "Defendant Lloyds accepted numerous wire transfers from as many as 90 percent of the investors who were duped. On numerous occasions, Lloyds wired the commingled funds to other corporations formed by the Leichners, to Man Financial, to offshore accounts, or to investors ...." (FAC ¶ 111(b).) Plaintiffs allege that Lloyds was aware of the Ponzi scheme since at least January 15, 2002, when Lloyds' senior manager wrote a memorandum about the Midland Entities' accounts. (*Id.* at ¶¶ 46–48.)

[25] Defendant's conduct of transferring funds on behalf of the Leichners and Midland Entities occurred at least twice within a one year span. All of these acts of wire fraud were related because they are alleged to have been knowingly committed in furtherance of the Ponzi scheme. Even though all acts were committed in furtherance of a single scheme, this scheme was ongoing and allegedly ended only by the Leichners' arrest on February 8, 2003. (*Id.* at 89); *see Turner,* 362 F.3d at 1229 ("Evidence of multiple schemes is not required to show a threat of continued criminal activity ... and, indeed, proof of a single scheme can be sufficient so long as the predicate acts involved are not isolated or sporadic."); *Ticor Title Ins. Co. v. Florida,* 937 F.2d 447, 450 (9th Cir.1991) (the frequency of three forgeries within a thirteen month period "suggests that this practice had become a regular way of con-

ducting business at Realty, satisfying the continuity prong of the pattern test."). Plaintiffs have sufficiently alleged that Defendant engaged in a pattern of racketeering activity.

### D.  *Causation*

[26] Defendant also contends that, even if Plaintiffs have alleged the elements of section 1962(c) claim, they have failed to allege standing. "The only requirement for RICO standing is that one be a 'person injured in his business or property by reason of a violation of section 1962.' " *Diaz v. Gates,* 420 F.3d 897, 901 (9th Cir.2005). "In order to plead a civil RICO claim, appellants must show that the defendants' violation of section 1962 was the proximate cause of their injury." *Hamid v. Price Waterhouse,* 51 F.3d 1411, 1419 (9th Cir. 1995). The "proximate cause of an injury is 'a substantial factor in the sequence of responsible causation.' " *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Assoc.,* 298 F.3d 768, 773 (9th Cir.2002).

[27] Defendant contends that it is the conduct of the Leichners—and not any wire transfers made and received by Lloyds TSB—that proximately caused the alleged losses at issue in this action. However, Plaintiffs allege that "the Leichners could not have succeeded if there was not a repository to which investors could send their funds and from which those funds could be siphoned off for the Leichners' own purposes." (FAC ¶ 39.) Additionally, "Lloyds was responsible for wiring much of the commingled funds out of the accounts in aid of the Ponzi scheme." (FAC ¶ 44.) Here, Defendant's alleged conduct directly assisted the perpetuation of the Ponzi scheme that injured the investors. *See Oki,* 298 F.3d at 774 (the proximate cause of the plaintiff's financial loss was the armed robbery, and not the bank teller's subsequent conduct of laundering the

proceeds). Moreover, this is not a case where Plaintiffs have suffered a passed-on injury—"that is, injury derived from a third party's direct injury"—instead, Plaintiffs were directly injured by the Ponzi scheme that Defendant allegedly helped facilitate. *See Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169 (9th Cir.2002). "In the RICO context, 'at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.' " *Id.* at 1168 (citing *NOW v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)). Plaintiffs have sufficiently pled a section 1962(c) claim.

### D. *California Business & Professions Code § 17200*

California Business & Professions Code § 17203 provides that:

> Any person who engages or has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments ... as may be necessary to restore to any person in interest any money or property ... which may have been acquired by means of such unfair competition.

Section 17204 provides: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction ... by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." Unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising ...." Cal. Bus. & Prof.Code § 17200.

There are several problems with Plaintiffs' section 17200 claim. Most importantly, Plaintiffs do not allege the conduct the claim is based on. It is unclear whether Plaintiffs' claim is based on Defendant's alleged aiding and abetting conduct,[7] conspiracy, or wire fraud. Plaintiffs have failed to put Defendant on fair notice of the basis for their claim. Additionally, because it is unclear what conduct Defendant has engaged in that is "unlawful, unfair, or fraudulent," the element of causation is not properly alleged. *See Laster v. T–Mobile USA, Inc.*, 407 F.Supp.2d 1181, 1194 (S.D.Cal.2005) ("The language of the UCL, as amended by Proposition 64, makes clear that a showing of causation is required as to each representative plaintiff.").

## V. *CONCLUSION*

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED without prejudice as to Plaintiffs' claim for California Business & Professions Code § 17200. Plaintiffs may file an Amended Complaint in conformity with this ruling no later than July 7, 2006. Defendant's Motion to Dismiss is DENIED as to Plaintiffs' claims for Aiding and Abetting Breach of Fiduciary Duty, Aiding and Abetting Fraud, Conspiracy, and violation of 18 U.S.C. § 1962(c).

---

**7.** Defendant contends that section 17200 requires that Defendant personally participate in the unlawful practices. However, it is clear that section 17200 liability can be imposed for aiding and abetting a principal violator. *See People v. Toomey*, 157 Cal.App.3d 1, 15, 203 Cal.Rptr. 642 (1984) ("if the evidence establishes defendant's participation in the unlawful practices, either directly or by aiding and abetting the principal, liability under sections 17200 and 17500 can be imposed").